**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**EDWINA C. ROGERS**
**6507 Broken Hill Court**
**Bethesda, MD 20816**

     **Plaintiff**

     **v.**                       **Case No. 1:13-CV-98 GBL/TRJ**

**JON DEANE, CPA**
**12355 Sunrise Valley Drive, No. 305**
**Reston, VA 20191**

**and**

**GAFFEY DEANE TALLEY, PLLC**
**12355 Sunrise Valley Drive, No. 305**
**Reston, VA 20191,**

     **Defendants**

_____

**<u>AMENDED COMPLAINT</u>**

Edwina C. Rogers, by and through undersigned counsel, states the following as her Complaint against Defendants Jon Deane and Gaffey Deane Talley, PLLC:

1.      This is a civil action alleging breach of contract, professional negligence, recoupment, intentional infliction of emotional distress, and conspiracy in violation of the Virginia Code.

2.      Plaintiff's ex-husband, Edward M. Rogers, Jr. ("Mr. Rogers") is an experienced Republican consultant. Prior to 1991, Mr. Rogers served as the Deputy Assistant to the President of the United States and Executive Assistant to the White House Chief of Staff in the Bush Administration, and he also served as Senior Deputy to Bush-Quayle Campaign Manager Lee

Atwater, from February of 1987 through the 1988 general election.  From 1985 through February of 1987, Mr. Rogers worked in the Reagan White House in the Office of Political Affairs.

3.      When it appeared his marriage to Plaintiff was over, Mr. Rogers turned against his wife, the mother of his two children

4.      Mr. Rogers received willing assistance from Defendant Jon Deane, the accountant for both him and Plaintiff for ten years.   In flagrant violation of Internal Revenue Service ("IRS") and American Institute of Certified Public Accountant ("AIPCA") regulations respecting conflict of interest, in furtherance of a conspiracy with Mr. Rogers, Mr. Deane continued representing both parties, diverted hundreds of thousands of dollars in credits and tax deductions into Mr. Rogers' tax returns, and diverted the tax liabilities, including penalties and interest, into Plaintiff' tax returns, all while Plaintiff was relying on Mr. Deane's professional relationship with her to protect her from such consequence.

## PARTIES

5.      Plaintiff Edwina C. Rogers ("Plaintiff") is a resident and citizen of the State of Maryland residing at 6507 Broken Hill Court, Bethesda, MD 20816.

6.      Defendant Jon Deane ("Mr. Deane") is a resident and citizen of the Commonwealth of Virginia having his principal place of business at 12355 Sunrise Valley Drive, No. 305, Reston, VA 20191.  Despite obvious conflicts of interest, for the tax years 2009 and 2010, Mr. Deane conspired with Mr. Rogers to give him the Rogers' tax credits, refunds, and deductions and leave Plaintiff with the tax liability of federal social security and income tax for staff paid for by Mr. Rogers.  These acts were actively concealed from Plaintiff, while Mr. Deane was purporting to represent Plaintiff and without disclosing any conflict of interest.  These acts were wrongful and violated applicable standards of practice and ethics.

7.      Defendant Gaffey Deane Talley, PLLC, a successor in part to Murphy Deane & Company, PLC (collectively "GDT") (together with Mr. Deane, "Defendants"), is a firm of Certified Public Accountants having its principal place of business in the Commonwealth of Virginia at 12355 Sunrise Valley Drive, No. 305, Reston, VA 20191.  Defendant Deane practices accounting as a member of this professional services firm.  GDT is jointly and severally liable for the acts and omissions of Mr. Deane.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because she and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants are citizens of the Commonwealth of Virginia, Mr. Deane resides in the Eastern District of Virginia, GDT has its principal place of business in the Eastern District of Virginia and/or because the events giving rise to Plaintiff's claims occurred in the Eastern District of Virginia.

10.     This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(e) and Va. Code §§ 8.01-328.1(A)(3) and/or (4) because they are present in the County of Fairfax in the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

11.     Edwina and Edward Rogers were lawfully married on November 4, 1989, in Washington, D.C.

12.     Plaintiff separated from Mr. Rogers in the same residence in September 2009 with the intent to seek a divorce.

13.     Mr. Rogers threatened and vowed to Plaintiff and other witnesses to destroy Plaintiff if she ever filed for divorce, even though they had been living separate lives for several years.

14.     Mr. Rogers made good on his threats in several ways, including conspiring with Mr. Deane to damage Plaintiff financially.

15.     Their divorce became final on September 17, 2012.

16.     Plaintiff moved to Maryland in November 2012.

17.     From the mid 1990's through 2008, Mr. Deane prepared federal income tax returns, IRS Form 1040s, and state income tax returns, for Plaintiff and Mr. Rogers using the filing status "Married Filing Jointly" (sometimes referred to herein to as "joint" or "married filing joint" returns). During this time, Mr. Deane charged Plaintiff and Mr. Rogers for his professional tax and accounting services and his bills were paid accordingly.

18.     Plaintiff and Mr. Rogers frequently met or spoke with Mr. Deane concerning the preparation and filing of Plaintiff's 1999-2008 joint federal and state income tax returns.

19.      Plaintiff relied on the fact that Defendants, as her fiduciaries, would be honest and forthcoming with her and would treat her fairly, notwithstanding her relationship with Mr. Rogers.

20.     Plaintiff relied on Mr. Deane to prepare the 1999-2008 joint federal and state income tax returns.

21.     For the tax years 1999-2008, Plaintiff and Mr. Rogers had an accountant-client relationship with the Defendants.

22.     Beginning in 1999, the Rogers employed various child care providers to provide care for their children. As employers for household employees, the Rogers are required to pay FICA and federal income taxes.

23.     Plaintiff, at the request of Mr. Rogers and Mr. Deane, set up with her Social Security and EIN Numbers, a payroll account to pay the salaries and required taxes of their child care providers.

24.     Mr. Rogers represented to Plaintiff that the salary and all related expenses including the taxes for the child care providers would be deducted from his personal account by the payroll company and would be paid for by him. In fact, from 1999-2008, Mr. Rogers paid the child care providers' salaries and processed and paid the tax related liabilities as promised.

25.     For 2009 through September 2010, however, Mr. Rogers did not pay the required taxes for the household employees; neither Defendant nor Mr. Rogers advised Plaintiff of this fact.

26.     Once Plaintiff became aware of Mr. Rogers' deceit, Plaintiff notified the payroll company that her social security and EIN numbers should not be on the account and that the tax liability was Mr. Rogers' responsibility.

27.     Notwithstanding, Mr. Rogers or his agent called the payroll company, without authority or permission, and reactivated the account to include Plaintiff's' Social Security and EIN numbers, again resulting in additional taxes and penalties being owed by Plaintiff.

28.     Mr. Deane was aware that Plaintiff and Mr. Rogers remained married on April 15, 2010.

29.     Upon information and belief, Mr. Rogers instructed Mr. Deane to prepare 2009 federal and state income tax returns exclusively for Mr. Rogers using the filing status "Married

Filing Separately" (sometimes referred to herein to as "separate" or "Married Filing Separate" returns).

30.     Defendants did not make an independent determination as to whether it was economically advantageous for Mr. Rogers and Plaintiff to file their 2009 Form 1040 and corresponding state return using the filing status "Married Filing Separate."

31.     Notwithstanding the fact that Mr. Deane continued to represent Plaintiff at the time and therefore had a fiduciary duty to protect her interests, and had prepared her joint federal and state income tax returns for the years 1999-2008, Mr. Deane did not advise Plaintiff that he was preparing separate 2009 federal and state income tax returns for Mr. Rogers until approximately July 6, 2010.

32.     On or before April 15, 2010, Mr. Deane prepared and filed an IRS Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for Mr. Rogers and Plaintiff for the year 2009 (the "Extension Request"). The instructions to the Form 4868 specifically state that "[i]f you plan to file a joint return, include both spouses' names in the order in which they will appear on the return." This Extension Request also served as an extension of time for Mr. Rogers and Plaintiff to file their joint 2009 Virginia income tax return.

33.     Mr. Deane included the names of both Plaintiff and Mr. Rogers on the Extension Request, thereby indicating the parties' intention to file a joint return.

34.     Mr. Deane did not advise Plaintiff at the time that he prepared and filed a separate extension request for Mr. Rogers, representing that he would file as Married Filing Separately, or that Mr. Rogers had already instructed him to prepare 2009 Married Filing Separate federal and state income tax returns and he was obeying this instruction.

35.     By preparing and filing the Form 4868 Extension Request, Mr. Deane expressly represented to Plaintiff that he intended to prepare the 2009 Form 1040 and the corresponding state income tax return for Mr. Rogers and Plaintiff using the filing status "Married filing jointly".

36.     Mr. Deane filed a Married Filing Separate Extension Request with the intent and purpose of concealing from Plaintiff his intention to prepare and file a separate tax return on her behalf.

37.     Mr. Deane was aware at the time he filed the Extension Request and at the time he filed the 2009 federal and state separate income tax returns that his clients, Plaintiff and Mr. Rogers, were intending to be divorced and therefore had conflicts of interest with one another concerning martial property.  As a result, Defendants had a conflict of interest in preparing 2009 Married Filing Separate federal and state income tax returns for Mr. Rogers.

38.     Plaintiff was Defendants' client at the time Mr. Deane prepared the 2009 federal and state Married Filing Separate returns for Mr. Rogers.

39.     Mr. Deane knowingly and intentionally concealed from Plaintiff his preparation of the 2009 federal and state Married Filing Separate returns for Mr. Rogers.

40.     Defendants made no attempt to disclose or resolve any actual or potential conflicts of interest that they had with Plaintiff at the time Mr. Deane prepared the 2009 federal and state Married Filing Separate returns for Mr. Rogers.

41.     Mr. Deane had a conflict of interest in continuing to represent Mr. Rogers as well as Plaintiff. Mr. Deane apparently attempted to "resolve" the conflict of interest he faced in providing professional accounting services to both of his clients in favor of Mr. Rogers, who had

always been the one to pay Mr. Deane his professional fee for CPA services.  However, the professional fee for services was always paid from the Rogers' joint funds.

42.    On the 2009 Married Filing Separate federal and state income tax returns Mr. Deane prepared for Mr. Rogers, Mr. Deane claimed exemptions for both of the Rogers' two children. Mr. Deane did not consult Plaintiff with regard to how those exemptions should be allocated, divided or otherwise utilized, in part because he intentionally concealed from Plaintiff the fact that he was preparing a separate return for Mr. Rogers.

43.    On the 2009 Married Filing Separate federal and state income tax returns that Mr. Deane prepared for Mr. Rogers, Mr. Deane claimed every deduction from income available to both Mr. Rogers and Plaintiff on the separate returns he prepared for Mr. Rogers. Mr. Deane never consulted Plaintiff concerning how those deductions should be allocated, divided or otherwise utilized, in part because he intentionally concealed from Plaintiff the fact that he was preparing a separate return for Mr. Rogers.

44.    On the 2009 Married Filing Separate federal and state income tax returns Mr. Deane prepared for Mr. Rogers, Mr. Deane did not include amounts due with respect to household employees who worked for the Rogers in their household during 2009.  Rather than include those amounts in Mr. Rogers' 2009 returns, Mr. Deane determined those amounts to be payable by Plaintiff.  Mr. Deane discussed his views concerning this determination with Mr. Rogers.  He did not consult Plaintiff with regard to how the household taxes should be reported on a state or federal income tax return, in part because he intentionally concealed from Plaintiff the fact that he was preparing a separate return for Mr. Rogers.

45.    On the 2009 Married Filing Separate federal and state income tax returns Mr. Deane prepared for Mr. Rogers, Mr. Deane claimed as credits against tax owed by Mr. Rogers

individually very substantial federal and state tax refunds that the couple carried over from their 2008 Married Filing Jointly return for Mr. Rogers, exclusively.  He did not consult Plaintiff with regard to how these state and federal tax refunds should be allocated, divided or otherwise utilized, in part because he intentionally concealed from Plaintiff the fact that he was preparing a separate return for Mr. Rogers.

46.    Plaintiff is not and has never been a tax professional, and she relied in good faith on the professionalism and expertise of Defendants to represent her as her accountant, to comply with all of their ethical and professional standards in executing such representation, and to prepare her state and federal income tax returns with the competence and integrity of a highly skilled CPA.

47.    In September 2010, as set forth below, Plaintiff learned of the significant tax liability that had been placed as her sole responsibility, and she was told she had three weeks to pay it in full.

48.    For 2009, $26,667 in federal taxes was and is owed for Laural Veloz (Mr. Rogers' current child care provider and secretary at BGR Group), Genoveva Ruiz-Navas (Mr. Rogers' current child care provider), and Aftab Buhari (Mr. Rogers' current housekeeper). These obligations were not paid by Mr. Rogers, despite his obligation to do so, and the fact that he employs them.

49.    For 2010, $10,890 in federal taxes was and is owed for Laural Veloz (Mr. Rogers' current child care provider and secretary at BGR Group), Genoveva Ruiz-Navas (Mr. Rogers' current child care provider), Aftab Buhari (Mr. Rogers' current housekeeper) and Nadya Ahmed (Mr. Rogers' former child care provider). These were not paid by Mr. Rogers, despite his obligation to do so, and the fact that he employs or employed them.

50.     Mr. Deane conspired with Mr. Rogers to take all tax credits, deductions, tax refund and the two minor children for Mr. Rogers' tax return in May 2010 and leave Plaintiff with none of the credits or deductions, but with all of the tax liability of the household employees.

51.     Defendants continued to represent both Mr. Rogers and Plaintiff, yet Mr. Deane did not inform Plaintiff of a conflict of interest, consistent with IRS Circular 230 § 10.29 (requiring a written consent if a conflict of interest exists), AICPA CPA Code of Conduct Best Practices §§ 102 (conflict of interest must be disclosed if exists and waiver obtained) and 501 (prohibiting any discreditable conduct).

52.     Mr. Deane prepared the tax return for Mr. Rogers and filed it on Mr. Rogers' behalf in May 2010, providing Mr. Rogers with all the credit for overpayment from 2008, all the capital gains loss carry over, all the mortgage interest deductions, and the deduction for both children, but no liability for payment of the child care providers or housekeepers.

53.     Defendants did not disclose this to Plaintiff.

54.     In sharp contrast, Mr. Deane prepared and mailed Plaintiff's tax return in September 2010; the return did not provide Plaintiff with any of the credits or deductions and put all of the tax liability for the child care providers and housekeepers, including all penalties and interest in Plaintiff's name.

55.     Mr. Deane did not disclose to Plaintiff the conflict of interest, nor did he disclose to Plaintiff what he had done, in conflict with Plaintiff' best interests.

56.     Mr. Rogers still employs the same household employees but has returned to paying their taxes.

57.     The Rogers had routinely filed their taxes in October; therefore Plaintiff had no way of knowing Mr. Rogers had filed separately in May and had taken the deductions and credits, leaving Plaintiff with Mr. Rogers' tax liability for household employees.

58.     Mr. Deane conspired with Mr. Rogers to harm Plaintiff and conceal their plan to engage in the conduct set forth above, even though Plaintiff was also Mr. Deane's client. Mr. Deane had the motive to conspire with Mr. Rogers because Mr. Deane receives considerable funds from Mr. Rogers as the CPA for Mr. Rogers' other various businesses. In addition, Mr. Deane's daughter was employed by Mr. Rogers' firm.

59.     Plaintiff was assessed a tax lien with penalties and interest by the IRS, and had her wages garnished, all as a consequence of Mr. Rogers' and Mr. Deane's conspiratorial conduct and plan. Prior to the IRS making contact with her, she did not even know that she had an unpaid federal tax liability that included the household taxes.

60.     Because of the Notice of Federal Tax Lien that the IRS filed and its forced collection effort, she is unable to get credit, has had difficulty finding suitable employment, and has suffered severe emotional as well as physical distress.

61.     As a result of Defendants' acts and omissions, Ms. Rogers has had to retain tax accountants and attorneys who have worked with her and with the IRS and Virginia Tax authorities to avoid forced tax collection.   In addition, she filed a request with the IRS for a Collection Due Process Hearing.

62.     A hearing was held in July 2012, and as a result the IRS has now agreed to an installment agreement with her to pay off the federal tax liability and avoid further forced collection. The IRS has refused to release or withdraw the Notice of Federal Tax Lien, which is still extant. She is now making monthly installment payments to the IRS. She has also filed an

amended Federal income tax return for 2009, which is currently pending with the IRS.   She
incurred substantial attorney, CPA, and return preparer fees in this process.

### COUNT ONE
### PROFESSIONAL NEGLIGENCE

63.     The allegations of the preceding paragraphs are incorporated as if fully set forth
herein.

64.     Mr. Deane, a member and principal of GDT, was acting within the scope of his
duties as an accountant and his employment by GDT, and therefore GDT is liable under, *inter
alia*, the doctrine of *respondeat superior* for purposes this Complaint.   Mr. Deane and GDT are
collectively referred to as "Defendants" for purposes of this Complaint.

65.     At all times relevant hereto, an accountant-client relationship existed between
Defendants and Plaintiff.

66.     At all times relevant hereto, Defendants owed a duty to Plaintiff to exercise the
degree of care, skill and dispatch of an accounting professional of ordinary skill.   Defendants
breached their duty to Plaintiff to exercise the degree of care, skill, and dispatch of an accounting
professional of ordinary skill.

67.     Defendants, *inter alia*, concealed from Plaintiff their intent to act in a manner
which was contrary to her financial and other interests, concealed from Plaintiff their intent to
expose Plaintiff to excessive tax and other liability, failed to make an independent determination
as to whether it was advantageous to Plaintiff to file a separate tax return, failed to advise
Plaintiff that they intended to prepare a separate tax return on Mr. Rogers' behalf, concealed from
Plaintiff the conflict of interest between Plaintiff and Mr. Rogers, failed to withdraw from the
engagement or attempt to obtain a waiver of conflict at the time the conflict of interest between
Plaintiff and Mr. Rogers arose or became known to them, failed to advise Plaintiff that they

-12-

intended to claim all of the couple's exemptions on Mr. Rogers' separate return, and failed to advise Plaintiff that they intended to claim all of the couple' s deductions on Mr. Rogers' separate return.

68.     Each of the above acts and omissions was done knowingly, intentionally, willfully, wantonly, with actual malice, and with conscious disregard for the rights of Plaintiff.

69.     In addition, Defendants committed *per se* professional negligence by violating applicable standards of ethics and practice.

70.     Defendants' grossly negligent and intentional acts and omissions, individually and in the aggregate, included violations of the standards of conduct and practice applicable to persons using the CPA title in the Commonwealth of Virginia as set forth in VA Code Ann. § 54.1-4413.3, and as set forth in the AICPA Code of Professional Conduct ("CPC"), in that Defendants', *inter alia*,

> a.     failed to exercise sensitive professional and moral judgment, failed to act in a way that serves the public interest, honors the public trust, and demonstrates a commitment to professionalism, failed to perform all professional responsibilities with due professional care and the highest sense of integrity, maintain objectivity and freedom from conflicts of interest in discharging professional responsibilities, and avoid knowingly misrepresenting facts or inappropriately subordinating judgment to others, and

> b.     engaged in activities that are false, misleading, and deceptive.

71.     More specifically, CPC ET § 102.03, addresses conflicts of interest, and requires that a conflict of interest "shall not operate to prohibit the performance of professional service"

as long as "the relationship is disclosed to and consent is obtained from [the affected] client . . . ."  The rule gives the following as an example "of situations that should cause a member to consider whether or not the client . . . could view the relationship as impairing the member's objectivity . . . .  A member has provided tax . . . services for a married couple who are undergoing a divorce, and the member has been asked to provide the services for both parties during the divorce proceedings."  Defendants were in exactly the defined conflict of interest situation when they were asked to prepare, and did prepare, the Joint Extension Request and Mr. Rogers' separate 2009 federal and state income tax returns, yet they neither disclosed the conflict of interest to Plaintiff nor obtained her consent to prepare Mr. Rogers' separate returns, in express violation of the PCP standards.

72.     As a licensed CPA preparing federal tax returns, Mr. Deane (and, vicariously, GDT) is subject to Treasury Department Circular 230 (Rev. May 2011) ("Circular 230").  Circular 230 Section 10.8(a) provides that " [a]ny individual who for compensation prepares or assists with the preparation of all or substantially all of a tax return or claim for refund is subject to the duties and restrictions relating to practice . . . . "

73.     Defendants' grossly negligent and intentional acts and omissions, individually and in the aggregate, also include violations of the standards of conduct and practice applicable to persons practicing before the Internal Revenue Service as set forth in Circular 230 at §§ 10.29 (Conflicting Interests) and 10.33 (Best Practices for Tax Advisors).

74.     Defendants violated § 10.29 of Circular 230, which provides that "a practitioner shall not represent a client before the Internal Revenue Service if the representation involves a conflict of interest."  A conflict of interest exists if:

a.      The representation of one client will be directly adverse to another client; or,

b.      There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person, or by a personal interest of the practitioner.

75.      Defendants violated § 10.33 of Circular 230, which provides that "Tax Advisors should provide clients with the highest quality representation," that professionals should communicate "clearly with the client regarding the terms of the engagement," and that professionals should act "fairly and with integrity in practice before the Internal Revenue Service."

76.      Defendants further violated § 10.29 of Circular 230 by representing Plaintiff and Mr. Rogers before the Internal Revenue Service where such representation involved a conflict of interest without having first obtained a waiver of conflict from Plaintiff.

77.      Defendants acted with actual malice and such willful and wanton recklessness as to evince a conscious disregard for the rights of Plaintiff.

78.      Plaintiff relied to her detriment on Defendants' omission and concealment of the material facts by acquiescing in their continued employment by her and preparation of her joint Extension Request.

79.      Defendants breached their duty and the standard of care to Plaintiff by, *inter alia*, concealing from Plaintiff their intent to act in a manner which was contrary to her financial and other interests, concealing from Plaintiff their intent to expose Plaintiff to excessive tax and other liability, representing to Plaintiff through the preparation and filing of the Extension Request that

they intended to prepare a joint return for Plaintiff and her husband at a time when they knew that to be false, failing to make an independent determination as to whether it was advantageous to Plaintiff to file a separate tax return, failing to advise Plaintiff that they intended to prepare a separate tax return on her spouse's behalf, concealing from Plaintiff the conflict of interest, failing to withdraw from the engagement or attempting to obtain a waiver of conflict at the time the conflict of interest between Plaintiff and Plaintiff' husband arose, failing to advise Plaintiff that they intended to claim all of the couple's exemptions on Mr. Rogers' separate return, failing to advise Plaintiff that they intended to claim all of the couple's deductions on Mr. Rogers' separate return, failing to advise Plaintiff that they intended to claim all of the couple's available tax refunds on the Mr. Rogers' separate return, failing to disclose to Plaintiff that on the separate return they were filing for Mr. Rogers that they would not report and pay the household employee's taxes, wholly failing to perform their professional responsibilities in accordance with Va. Code Ann. § 54.1-4413.3, and engaging in activities which were false, misleading, and deceptive.

80.     As a proximate result of Mr. Deane's serial breaches of his duty of care, Plaintiff has suffered, and will continue to suffer, damages including but not limited to excess tax liability, the assertion of a federal tax lien against her by the IRS, expenses associated with amending her tax returns, negative impact on her credit rating, garnishment of her wages, expenses associated with seeking other relief from the IRS, interest, penalties, attorneys' fees and costs, and other pecuniary damages.

81.     Because Defendants acted with actual malice and such willful and wanton recklessness as to evince a conscious disregard for Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT TWO
## BREACH OF CONTRACT

83.     The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

84.     Defendants entered into a contract with Plaintiff pursuant to which they agreed to perform accounting and tax return preparation for her.

85.     Implicit in that contract of employment was Defendants' agreement and duty to perform in a competent and professional manner.

86.     Defendants breached their agreement with Plaintiff by, *inter alia*, concealing from Plaintiff their intent to act in a manner which was contrary to her financial and other interests, concealing from Plaintiff their intent to expose her to excessive tax and other liability, representing to Plaintiff through the preparation and filing of the Extension Request that they intended to prepare a joint return for Plaintiff and her husband at a time when they knew that to be false, failing to make an independent determination as to whether it was advantageous to Plaintiff to file a separate tax return, failing to advise Plaintiff that they intended to prepare a separate tax return for Mr. Rogers to her detriment, concealing from Plaintiff the conflict of interest between Plaintiff and her husband, failing to withdraw from the engagement or attempting to obtain a waiver of conflict at the time the conflict of interest between Plaintiff and Mr. Rogers arose, failing to advise Plaintiff that they intended to claim all of the couple's exemptions on Mr. Rogers' separate return, failing to advise Plaintiff that they intended to claim all of the couple's deductions on Mr. Rogers' separate return, failing to advise Plaintiff that they intended to claim all of the couple's available tax refunds as credits against tax on Mr. Rogers' separate return, failing to advise Plaintiff that they would not report the couple's obligation to pay the taxes due with respect to household employees on Plaintiff's separate return, failing to

perform their professional responsibilities in accordance with Va. Code Ann. § 54.1-4413.3, and engaging in activities which were false, misleading, and deceptive.

87.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and will continue to suffer damages, including but not limited to excess tax liability, garnishment of her wages, the assertion of a federal tax lien against her by the IRS, expenses associated with amending her tax returns and seeking other relief from the IRS, negative impacts on her credit rating, interest, penalties, loss of income and other pecuniary damages.

**COUNT THREE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

88.     The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

89.     The actions and conduct of the Defendants, as set forth above, were intentional or reckless in that they had the specific purpose of inflicting emotional distress on Plaintiff.

90.     Defendants fully intended their conduct, and knew or should have known that severe emotional distress would likely result.

91.     Defendants' conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

92.     This conduct by Defendants was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregard for the rights of Plaintiff.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress.

94.     As a direct and proximate result of the behavior of the Defendants towards Plaintiff, Plaintiff has suffered severe emotional distress with physical manifestations. Such physical manifestations include, but are not limited to, anxiety (including unwittingly holding her

breath), grinding and gnashing teeth (resulting in cracks in two teeth), symptoms of Temporomandibular Joint Disorder (TMJ), hyperventilating, constant stomach cramps, frequent diarrhea, muscle tension, high blood pressure, irritability with friends and family, inconsolable crying, depression, feelings of hopelessness and helplessness, isolating herself and avoiding social relationships and situations, stress, insomnia, inability to focus and think clearly, and other psychological and physiological maladies.

95.     As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer severe emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other non-pecuniary losses.

96.     Because Defendants acted with actual malice and such willful and wanton recklessness as to evince a conscious disregard for Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT FOUR
## RECOUPMENT

97.     The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

98.     Plaintiff seeks return of all amounts paid by her and her husband to Defendants during 2008, 2009, and 2010.

**COUNT FIVE**
**CONSPIRACY IN VIOLATION OF VA. CODE §§ 18.2-499 AND -500**

99.    The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

100.    Beginning in approximately 2004 and at all relevant times hereto, Plaintiff operated a government relations consulting business sometimes known as Clifton Consulting (the "Business").

101.    Defendant knew of and advised Plaintiff in connection with the Business, including, but not limited to, advice with respect to tax planning, preparation of state and federal tax forms related to the Business, advising Plaintiff to have her principal place of business in Fairfax County, Virginia, applying for and obtaining on behalf of the Business a Virginia Business License, and preparing withholding tax forms for the employees of the Business.

102.    Defendant and Mr. Rogers knew the acts described in this Amended Complaint would injure Plaintiff's reputation and her Business.

103.    Defendant and Mr. Rogers conspired to intentionally and maliciously damage Plaintiff's reputation and her Business.

104.    As a direct and proximate result of Defendant's intentional and malicious acts in furtherance of the conspiracy, Plaintiff's reputation and her Business has, in fact, been damaged.

105.    As but one example, as a direct and proximate result of Defendant's intentional and malicious acts in furtherance of the conspiracy, the IRS publicly filed a Notice of Federal Tax Lien against  Plaintiff in June, 2011. By operation of federal law, the federal tax lien attaches to all of Plaintiff's property and rights to property, real and personal, whether tangible or

-20-

intangible. The federal tax lien negatively affects Plaintiff's ability to apply for and maintain credit, purchase real property, secure consulting engagements with third parties, and generally harms and interferes with the reputation as well as with the business operations of the Plaintiff and of Clifton Consulting.

106.    In 2009, Plaintiff's Business earned revenue of approximately $223,000 and had one employee.

107.    In 2012 and 2013 to date, as a direct and proximate result of Defendant's intentional and malicious acts in furtherance of the conspiracy, Plaintiff's Business has earned no revenue and no longer has any employees.

108.    As a direct and proximate result of Defendant's intentional and malicious acts in furtherance of the conspiracy, Plaintiff has suffered and continues to suffer damages to her reputation and her Business.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against the Defendants, jointly and severally, and further:

A.    Award Plaintiff compensatory damages of Five Million Dollars ($5,000,000), plus demonstrated past and future pecuniary damages;

B.    Award Plaintiff punitive damages of $350,000;

C.    Award Plaintiff treble damages pursuant to Va. Code §§ 18.2-500(A);

D.    Award Plaintiff her attorneys' fees, expert fees, and costs of suit pursuant to Va. Code §§ 18.2-500(B); and

E.    Award Plaintiff such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.


March 13, 2013                              Respectfully submitted,


                                           _____/s/_____
                                           **ROBERT WINTHROP JOHNSON II**
                                           **VIRGINIA BAR NO.  14430**
                                           **401 Ninth St., N.W., Suite 640**
                                           **Washington, D.C. 20004**
                                           **(703) 506-3389**
                                           **robinjohnson@jrcdc.us**

**Of Counsel:**   **Steven Gremminger**
                  **Steven M. Oster**
                  **G*remminger Law Firm***
                  **5335 Wisconsin Ave., N.W., Ste. 440**
                  **Washington, D.C. 20015**
                  ***Pro Hac Vice***