**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

EDWINA C. ROGERS,

      **Plaintiff,**

    **v.**                             **Civil Action No. 1:13-CV-98 GBL/TRJ**

JON DEANE, CPA, *et al.*,

      **Defendants.**

_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Edwina C. Rogers, by and through undersigned counsel, respectfully submits this memorandum in opposition to the Motion for Summary Judgment ("Motion") filed on behalf of defendants Jon Deane ("Deane") and Gaffey Deane Talley, PLLC ("GDT") (together "Defendants"). Because this case is riddled with disputed issues of material fact, most notably as to whether Plaintiff ever received, saw, or agreed to the unsigned, post-dated, and incomplete "contract" which Defendants ask the Court to enforce against her, the Motion must be denied. At a minimum, pursuant to Fed. R. Civ. P. ("Rule") 56(d) and the attached Declaration of Steven M. Oster, Plaintiff is entitled to discovery in order to challenge and develop evidence regarding Defendants' numerous uncorroborated and credibility-dependent assertions.

**PRELIMINARY STATEMENT**

      Defendants have neither answered the Second Amended Complaint nor sought an extension pending resolution of their Motion. A motion for summary judgment is not an answer to a complaint or a motion pursuant to Rule 12. Although some courts have deemed summary judgment motions sufficiently similar to Rule 12 motions to excuse a defendant's failure to answer before moving, fundamental fairness requires Defendants respond to the factual

allegations in the Second Amended Complaint as a condition to seeking a judgment on the basis

that no disputed issues of material fact exist:

> The ambiguity of the rules makes disposition of this issue difficult. Generally the best course of action is to complete the pleadings for the record. Pleadings may help the parties involved and the Court to understand the relevant facts, issues and law. However, defendants' belief that the law supports the notion that a summary judgment motion falls within the scope of "defend" within the meaning contemplated by Rule 55 and that the summary judgment motion can toll the response time, minimally amounts to a good faith interpretation of the law or alternatively could be considered excusable neglect pursuant to Rule 6(b).

*Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993), *aff'd,* 39 F.3d 1188 (9th Cir. 1994).

At the very least, if Defendants are to be excused from answering, then the allegations in

the Second Amended Complaint must be accepted as true, as they would be pursuant to Rule 12.

*See Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 539 (4th Cir. 2013) (pursuant to

Rule 12(b)(6) a court must accept as true all well-pleaded allegations in a complaint and draw all

inferences therefrom in plaintiff's favor).  Otherwise, Plaintiff is prejudiced.[1]  Alternatively, the

Court should require Defendants to answer the Second Amended Complaint prior to ruling on

the within Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Edwina and Edward Rogers were married on November 4, 1989, in Washington, D.C.

(Second Amended Complaint ("SAC"), Doc. 24, at ¶ 11).  They separated but continued to

---

[1] For instance, Plaintiff has alleged numerous facts which confirm, once and for all, Defendants were not agents of Ed Rogers.  (Second Amended Complaint, Doc. 24, at ¶¶ 24-33).  Were Defendants required to plead in response, and thereby forced to admit those allegations, they could not continue to assert they and Mr. Rogers were agent and principal.

reside in the same residence through December 2012 and their divorce became final on September 17, 2012.

**Facts**

From the mid 1990's through 2008, Mr. Deane prepared federal and Commonwealth income tax returns for Plaintiff and Mr. Rogers using the filing status "Married Filing Jointly" (referred to herein to as "joint" returns). During this time, Mr. Deane charged Plaintiff and Mr. Rogers for his professional tax and accounting services and his bills were paid accordingly.   At all times relevant to the Second Amended Complaint, and prior to April 15, 2009, Mr. Deane was aware Plaintiff and Mr. Rogers were to divorce and their interests conflicted.  This litigation arises out of Mr. Deane's resolving the conflict in favor of Mr. Rogers, concealing information from Plaintiff, lying to Plaintiff, and conspiring with Mr. Rogers to destroy Plaintiff's business.

**No Agency Relationship Existed Between Defendants and Mr. Rogers**

There is no written agreement which sets forth the basis of Mr. Deane's engagement by Plaintiff.  (Plaintiff's Dec. at ¶¶ 2-13).[2]  There can be no serious contention Mr. Deane agreed to act as an agent of either or both of the Rogers.  The form letter which Defendants attach to their Motion and contend is a contract between them and the Rogers contains no agency agreement or language from which an agency can be inferred.  (Doc. 30-2).  Neither of the Rogers provided Mr. Deane a federal or state power of attorney, thus precluding him from communicating with the IRS or state taxing authorities on their behalf.  There is no evidence the Rogers, or either of

---

[2]  Plaintiff's declaration establishes she never saw or agreed to be bound by the unsigned document Defendants' claim is a contract, which itself is dated after Mr. Deane's misconduct commenced and is missing a supposedly incorporated attachment.  At a minimum, disputed issues of material fact preclude summary judgment based on purportedly exculpatory language in this document.

them, held out Mr. Deane as their agent to any third party. As fully discussed below, Defendants' relationship with the Rogers was that of an independent contractor.

## Defendants' Misconduct

Defendants breached their duty to provide accounting services to Ms. Rogers with reasonable care, skill, and dispatch. Defendants knowingly prepared and filed documents with the IRS which caused Plaintiff to immediately and continually suffer foreseeable damages. Prior to 2009, Mr. Deane had always prepared joint returns for the Rogers. Without consulting Plaintiff--indeed while concealing his actions from and otherwise misleading her--Mr. Deane prepared a separate return for Mr. Rogers in which he allocated to him all of the couple's available credits, deductions, and tax payments which would otherwise have been available to Plaintiff. (Plaintiff's Dec. at ¶ 16). At the same time, Mr. Deane sent to Plaintiff an automatic extension request which stated the parties were filing jointly. (*Id*. at ¶ 17). ***That document indicated the Rogers had overpaid estimated taxes for 2009.*** (Doc. 30-6). He knew on the date it was filed that Plaintiff would be immediately exposed to IRS penalties, which would continue to accrue. (Ex. 1). He knew, or should have known, by advising Plaintiff that the joint extension request permitted the Rogers to delay filing their tax return until October 15, 2010, Mr. Deane was exposing Plaintiff to yet another IRS penalty.[3] He disclosed none of this to Plaintiff and refused her subsequent requests for information, including her request for a copy of Mr. Rogers' return. (Plaintiff's Dec. at ¶¶ 19, 23). In so doing, Mr. Deane breached his agreement with Plaintiff and violated Virginia law and the accounting standards he was bound to uphold. (SAC at ¶¶ 76-82, 111).

---

[3] Defendants deny this penalty "as a matter of law." (Motion at 17). However, the IRS assessed a $19,000 penalty against Plaintiff for failing to obtain a valid extension. (Plaintiff's Dec. at ¶ 31).

## Plaintiff Did Not Fail To Pay Household Employee Taxes

Defendants repeatedly claim the Rogers—or Plaintiff—failed to pay household employee taxes for 2009.  This is false.  The household employee taxes were paid on a current basis during 2009 in quarterly installments.  (Plaintiff's Dec. at ¶ 22).  Based on the information she received from Mr. Deane, Plaintiff believed no taxes would be due.  (Doc. 30-6).  However, when Mr. Deane secretly prepared the separate return for Mr. Rogers, he allocated to him all of the credit for those payments and left Plaintiff with all of the liability for the household employee taxes. (*Id.*).  ***In other words, Defendant Deane, in concert with Mr. Rogers, willfully and surreptitiously caused the Plaintiff to incur liability for additional taxes, penalties, and interest.***  Relying on Mr. Deane's preparation of the joint extension request, which was consistent with past practice, and his silence as to his intention to prepare a separate return for Mr. Rogers, Plaintiff could not have known Mr. Deane had placed her in peril.  By his own admission, Mr. Deane knew Plaintiff was incurring damages but communicated this fact only to Mr. Rogers.  (Ex. 1).  He refused to provide her a copy of the separate return he prepared for Mr. Rogers, which would have alerted her to the tax liability (and Mr. Deane's duplicity).  (*Id*. at ¶ 23).  Instead, Mr. Deane sent to Plaintiff an application for extension of time which indicated the Rogers had ***overpaid*** their taxes for 2009.  (Doc. 30-6).  Mr. Deane concealed the truth from Plaintiff until Mr. Rogers' separate return had already been filed.  (Plaintiff's Dec. at ¶¶ 21-23).  By the time Mr. Deane finally disclosed his misconduct to Plaintiff, ***she had already suffered damages***.

## The Conspiracy Between Messrs. Deane and Rogers

Mr. Deane committed this misconduct in concert with Mr. Rogers.  There is sufficient evidence of their collusion to preclude summary adjudication of this issue.  At the same time Mr.

Deane was sending Plaintiff the joint extension request, he and Mr. Rogers agreed Mr. Deane would not send other information regarding the Rogers' taxes to their home, where it would be available to Plaintiff.  (Ex. 2).  They knew there would be no joint return.  (Exs. 2, 3).  They agreed Mr. Deane would prepare separate returns and review the "outcome" with Mr. Rogers prior to finalizing.  (Ex. 2).  As of May, 2010 Mr. Deane knew Plaintiff was continually accruing penalties and interest and communicated that fact to Mr. Rogers but not Plaintiff.  (Exs. 1 and 6).  When Plaintiff requested information concerning the return Mr. Dean had prepared for Mr. Rogers, Mr. Deane refused her request.  (Plaintiff's Declaration at ¶¶ 19, 23).  By contrast, long after she discharged him, Mr. Deane disclosed Plaintiff's 2007 and 2008 business income and other confidential information to Mr. Rogers upon *his* request.  (Ex. 7).

Mr. Deane was intimately familiar with Plaintiff's consulting business.  (Plaintiff's Dec. at ¶ 28).  He knew his malfeasance would cripple Plaintiff's business and prevent her from earning sufficient income to challenge Mr. Rogers for custody of their children.  (SAC at ¶ 89, 90).  Mr. Deane's motive is clear; he entered into the conspiracy for his own financial benefit.  Mr. Rogers directly and indirectly sends a material amount of business to Defendants' accounting firm.  In addition to Mr. Rogers' personal tax work, Mr. Deane provides tax and auditing services for several companies which Mr. Rogers controls, including BGR Consulting, Inc.  Plaintiff cannot provide comparable income to Defendants.  Even now Mr. Rogers continues to work with Defendants and against Plaintiff by voluntarily submitting a declaration in support of Defendants' motion.  (Doc. 30-4).

As a direct, proximate, and foreseeable result of Defendants' acts and omissions described above, Plaintiff has suffered and continues to suffer damages, including additional taxes, penalties, and interest.  (SAC at ¶¶ 97-107).  While the document Defendants' claim is a

contract may not be enforced against the Plaintiff, it demonstrates these damages were foreseeable to Mr. Deane at the time he agreed to provide accounting services to Plaintiff.  (Doc. 30-2).  Plaintiff's consulting business has been ruined and her professional life and reputation tarnished.

### Procedural Background

Plaintiff commenced the within action on January 23, 2013, (Doc. 1), and amended her complaint on March 13, 2013.  (Doc. 8).  Defendants moved to dismiss or, alternatively, for summary judgment on May 15, 2013.  (Doc. 9).  The motion was heard and granted on July 26, 2013.  (Doc. 30-20).  The Court granted Plaintiff leave to amend her complaint, which she did by filing the operative Second Amended Complaint on August 16, 2013.  (Doc. 24).  The within Motion followed.  (Doc. 30).

### ARGUMENT

Disputed issues of material fact require Defendants' Motion be denied.  First, Defendants may not rely on exculpatory language in an unexecuted form agreement in the absence of evidence Plaintiff agreed to the document or any of the terms therein.  Second, there is no authority for the proposition that an accountant cannot conspire with a client. Because Defendants cannot demonstrate Mr. Deane was an agent of Mr. Rogers or that the intracorporate immunity doctrine applies to this case, there is no basis to dismiss Plaintiff's business tort claim pursuant to Va. Code. §§ 18.2-499 and -500.  Third, the evidence demonstrates Defendants proximately caused Plaintiff's damages and, further, that such damages were foreseeable to

Defendants. Fourth, that Plaintiff may have settled certain claims against her ex-husband does not release Defendants from liability.[4]

### Standard of Review

The standard for summary adjudication pursuant to Rule 56 is well-known. The Court must view all of the evidence in the light most favorable to Plaintiff. *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433-34 (4th Cir. 2013). Summary judgment may be granted only if there is "no genuine dispute as to any material fact and [Defendants] are entitled to judgment as a matter of law based on the materials in the record…." *Id*. The Court may not weigh the evidence, but rather "only determine whether there is a genuine issue for trial." *Id*. (citing *Gray v. Spillman,* 925 F.2d 90, 95 (4th Cir.1991). Judgment may be granted only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). "Accordingly, even though there may be no dispute about the basic facts, still summary judgment will be inappropriate if the parties disagree on the inferences which may reasonably be drawn from those undisputed facts." *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

The parties are in apparent agreement that the substantive law of Virginia governs the merits of Plaintiff's claims.

## I. DEFENDANTS MAY NOT ENFORCE AGAINST THE PLAINTIFF LANGUAGE IN A DOCUMENT TO WHICH SHE DID NOT AGREE.

Defendants devote a substantial portion of their memorandum in support of the within Motion to exculpatory language in an unsigned form letter (the "Form Agreement") which they

---

[4] Plaintiff takes no position as to whether Defendants' breach of the implied covenant of good faith and fair dealing is considered a separate cause of action or a separate breach of the accountant-client contract between them. (Motion at 10).

contend may be enforced against Ms. Rogers.  (Motion at 5-10).  Disputed issues of fact require this contention be rejected.

As a threshold matter, questions as to whether a party intended to be bound by an agreement are particularly unsuited to summary adjudication.  Disputes "about whether a contract has or has not been formed as a result of words and conduct over a period of time are quintessentially disputes about states of mind … traditionally understood to be for the trier of fact."  *Charbonnages de France v. Smith*, 597 F.2d 406, 414-15 (4th Cir. 1979) (citation omitted).  In the instant case, Defendants' only apparent evidence of assent by the Plaintiff is the fact that Plaintiff has brought a claim for breach of contract.  (Motion at 6).  Defendants offer no evidence of assent to any of the terms in the Form Agreement on which they rely, however.  Both Mr. Deane and his confederate, Mr. Rogers, (who continue to work together and against Plaintiff), have submitted declarations in support of Defendants' Motion.  (Docs. 30-3 and 30-4).  Absent from both declarations is any evidence Plaintiff ever possessed, saw, or agreed to the purported "contract."  (*Id.*).[5]

In fact, there is no basis to enforce the Form Agreement against Plaintiff.  To begin with, the document on its face raises issues as to its validity.  It is not signed by any of the parties, including Defendant Deane.  It is dated May 4, 2010, weeks ***after*** Defendants breached the implied contract and injured Plaintiff, and after Defendants admit knowing they would be

---

[5] Defendants cannot seriously contend that because Plaintiff has alleged a breach of contract, she therefore must be bound to ***that particular document***.  The Second Amended Complaint alleges breach of contract because "a claim for accountant malpractice lies in contract.  It may sound in negligence, but it is a breach of contract claim."  *Forte v. Atkins*, 68 Va. Cir. 411 (2005).  This Court has already so held.  (Doc. 30-20 at 48:5-11).  By agreeing to perform accounting services for Plaintiff, Defendants impliedly agreed to "exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which [they were] employed."  *Forte*, 68 Va. Cir. at 411.  Defendants' conduct in breach of this implied agreement is the basis of Count One of the Second Amended Complaint.

preparing a separate return for Ed Rogers.  (Motion at 15).  The Form Agreement incorporates by reference an "attached policy regarding the preparation of additional state returns."  (Doc. 30-2 at 1).  The attachment is missing from the document.  (*Id.*).  Any remaining doubt that Defendants' motion should be denied is furnished by Plaintiff's Declaration, in which she states she never saw or agreed to any of the terms in the Form Agreement.  (Plaintiff's Dec. at ¶¶ 2-9).   Nor have Defendants introduced any evidence from which Plaintiff's assent to the Form Agreement may be implied.

Because there are disputed issues of fact as to Plaintiff's assent to the terms of the Form Agreement, Defendants' motion for summary judgment as to Count One of the Second Amended Complaint must be denied.

## II.   IT IS NOT THE LAW IN VIRGINIA OR ANY OTHER JURISDICTION THAT ALL ACCOUNTANTS ARE AGENTS OF THEIR CLIENTS; DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BUSINESS CONSPIRACY CLAIM.

The Second Amended Complaint establishes that the relationship between Mr. Deane and Mr. Rogers was not one of agent and principal.  The evidence which Defendants offer in support of their Motion confirms Defendant Deane never agreed to act as Mr. Rogers' agent.  Accordingly, there is no basis on which to grant Defendants summary adjudication of Count Three of the Second Amended Complaint.[6]

---

[6] There is one other theory which, if proven, would preclude a conspiracy between Mr. Deane and Mr. Rogers: intra-corporate immunity.  Defendants claim to rely on the doctrine, (Motion at 2), but wisely abandon it.  Under the intra-corporate immunity doctrine "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."  *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (citation omitted).  Obviously the doctrine has no application to this case.

A.   **Accountants Are Not Automatically Deemed Agents of Their Clients And Accountants Can Conspire With Their Clients.**

Defendants would have the Court rule that every accountant-client relationship is an agency relationship.  That is not the rule in Virginia (or, to Plaintiff's knowledge, in any other jurisdiction).  *Allen Realty Corp. v. Holbert*, 227 Va. 441, 447, 318 S.E.2d 592, 595 (1984).  *See also Couch v. United States*, 409 U.S. 322, 324 (1973) (account "an independent contractor with his own office and numerous other clients who compensated him on a piecework basis").  In *Allen Realty*, the Virginia Supreme Court found there to be disputed questions of fact as to **whether** the defendant accounting firm was acting as its client's agent.  *Id*.  There, the accounting firm was engaged to act on behalf of a client liquidating real estate.  Insofar as the accounting firm was thus empowered with the actual and apparent authority to "alter the legal relations between the principal and third persons," that relationship bore the hallmark of an agency.  Restatement (Second) of Agency ("Restatement") § 12.

In addition, it is well-settled under Virginia law that the "criterion for determining whether a relationship is one of principal-agent … is control or the right to control the methods or details of doing the work…."  *Wells v. Whitaker*, 207 Va. 616, 624, 151 S.E.2d 422, 429 (1966).  *See also* Restatement § 14 ("A principal has the right to control the conduct of the agent with respect to the matters entrusted to him").  No such relationship is apparent here.[7]

---

[7] Indeed, reported cases in which an accountant conspired with his client are legion.  *See, e.g., Boykin v. Arthur Andersen & Company*, 639 So.2d 504 (Ala. 1994) (conspiracy between bank officers and CPA firm); *Fisher v. Kletz*, 266 F.Supp. 180 (S.D.N.Y. 1967) (conspiracy between corporation and accounting firm); *Gutfreund v. Christoph*. 685 F.Supp. 1378 (1987) (conspiracy between sellers of securities and sellers' accounting firm);

    **B.**    **The Second Amended Complaint Alleges Facts and Defendants Have Proffered Evidence Which Precludes The Affirmative Defense of Agency.**

As a threshold matter, Defendants assert the Second Amended Complaint is a disguised motion for reconsideration because it "offers no new factual allegations." This contention is simply false. Plaintiff has now alleged, and Defendants have not denied, that Mr. Deane did not agree to act as an agent for Plaintiff or Mr. Rogers, (SAC at ¶ 24); that Defendants were not engaged to represent Mr. Rogers before the IRS or any state taxing authority, (*id*. at ¶ 26); that neither Plaintiff nor Mr. Rogers executed an IRS Form 2848 Power of Attorney on behalf of Mr. Deane, (*id*. at ¶ 27); that Mr. Deane did not have the authority or power to alter Mr. Rogers' legal relationship with any third party, including the IRS and state taxing authorities, (*id*. at ¶ 28); that Mr. Rogers did not have the power to control the details Defendants used to perform their accounting services, (*id*. at ¶ 29); that neither Plaintiff nor Mr. Rogers entrusted any property to Mr. Deane, (*id*. at ¶ 30); that neither Plaintiff nor Mr. Rogers held out Mr. Deane as their agent to any third party, (*id*. at ¶¶ 31, 32).

In response to these allegations, as "the party alleging an agency relationship [Defendants have] the burden of proving it." *Riestroffer v. Pers.*, 247 Va. 45, 48, 439 S.E.2d 376, 378 (1994) (citing *Allen v. Lindstrom*, 239 Va. 489, 496, 379 S.E.2d 450, 454 (1989). Defendants' agency theory is an affirmative defense. However, instead of facts from which an agency relationship could be inferred, Defendants offer gratuitous legal conclusions. Mr. Rogers states in his declaration that since the mid-1990s Mr. Deane "has been my agent for tax purposes." There are two problems with this assertion, each of which is fatal to Defendants' motion. First, even if credited it merely creates an issue of fact. Second, even assuming, *arguendo*, the statement were true, it does not preclude a conspiracy between Messrs. Deane and Rogers ***to injure the Plaintiff***.

The rule on which Defendants rely states a principal cannot conspire with an agent "act[ing] within the scope of its agency." *Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996). Not even Defendants assert Mr. Deane was engaged to represent Mr. Rogers in transactions with the Plaintiff.

What evidence Defendants **have** introduced plainly supports Plaintiff's allegations of a conspiracy. Defendants contend their relationship with Mr. Rogers is governed by the Form Agreement. (Motion at 5-10). That document is not an agency agreement; it merely is an offer to prepare tax forms. (Doc. 30-2). In contrast to the litigation-driven statements in the Deane and Rogers declarations, the Form Agreement states "Our engagement will be complete upon the delivery of the returns to you." (*Id*. at 1). It contains no language empowering Defendants to communicate with any third party on behalf of Mr. Rogers. It contains no language empowering Defendants to alter Mr. Rogers' legal relationship with any third party. It does not entrust any property to Defendants. It bears no indicia of an intent by Mr. Deane to act as an agent or of an intent by Mr. Rogers to appoint an agent. Having offered sworn testimony that the Form Agreement sets forth the terms of Defendants' engagement by Mr. Rogers, Defendants can no longer assert the affirmative defense of agency.

### C. Disputed Issues of Material Fact Otherwise Preclude Summary Adjudication of Plaintiff's Business Tort Claim.

Defendants make several other arguments in support of summary adjudication of Plaintiff's claim pursuant to Va. Code. §§ 18.2-499 and -500 which are either insufficient as a matter of law or which are defeated by disputed issues of fact.

First, Defendants contend Plaintiff has not shown Mr. Deane had a personal motive in depriving Plaintiff of her business income. (Motion at 12). It is not necessary that all members of a conspiracy share the same motive, or that all members have an unlawful motive. The statute

"does not require that the co-conspirator act with legal malice. Rather, the statute simply requires that one party, acting with legal malice, conspire with another party to injure the plaintiff…." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 527 (4th Cir. 1997). The Virginia Supreme Court has held the statute does "not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business…. Rather, … these statutes merely require proof of legal malice, that is, proof that the defendant acted intentionally, purposefully, and without lawful justification." *Advanced Marine Enters., Inc. v. PRC Inc.,* 256 Va. 106, 501 S.E.2d 148, 154-55 (1998). "Legal malice" means the defendant "contrived to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Carpenter v. Drechsler,* 1991 WL 332766, at *8 (W.D.Va. May 7, 1991) (citations omitted), *aff'd mem.,* 19 F.3d 1428 (4th Cir. 1994); *see also Hechler Chevrolet, Inc. v. General Motors Corp.,* 230 Va. 396, 337 S.E.2d 744, 748 (1985) ("[A]n allegation of conspiracy … must at least allege an unlawful act or an unlawful purpose.").

Defendants also argue *Buschi v. Kirven*, 775 F.2d 1240, 1242 (4th Cir. 1985), requires the Court to dismiss Plaintiff's claim. (Motion at 12). *Buschi* has no relevance here. It is a whistleblower case—several dismissed employees of a state mental hospital alleged they were terminated because they had complained through institutional channels of patient abuse, racial discrimination, and mismanagement. One count of their complaint sought damages pursuant to Va. Code §§ 18.2-499 and -500 for injuries to their professional reputation and future employability. *Id*. at 1259. The plaintiffs "made no claim of business-related injury." *Id*. Thus the court dismissed the business tort claims.

By contrast, injury to Plaintiff's business was an object of the conspiracy between Mr. Rogers and Defendants. Plaintiff "need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but, importantly, the plaintiff must prove that such a purpose was at least *one* of the purposes of the conspiracy." *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) *aff'd sub nom. Schlegel v. Bank of Am., NA*, 258 F. App'x 543 (4th Cir. 2007). Plaintiff has met this burden. She has alleged Mr. Rogers sought to deprive Plaintiff of her business income to cripple her ability to challenge him for custody of their two children. (SAC at ¶ 3). Mr. Deane agreed to assist Mr. Rogers for his own pecuniary gain: Mr. Rogers controls substantial tax and auditing business for Mr. Deane's firm. (SAC at ¶¶ 65-67). The Second Amended Complaint alleges numerous unlawful acts on the part of Defendants which they have not denied, including violations of Va. Code § 54.1-4413.3, which incorporates the CPA Code of Professional Conduct. (SAC at ¶ 76(a)).

Defendant's final argument is to deny Plaintiff's business exists, claiming "there is no registered business in the Commonwealth called 'Clifton Consulting.'" (Motion at 13). Not only did the business exist prior to the acts of which Plaintiff complains, but it flourished. (Plaintiff's Dec. at ¶¶ 29-30). Mr. Deane advised her in connection with the business, including tax planning, preparation of business tax forms, and providing general business advice. (SAC at ¶ 85). Here again, even if their contentions are credited, at best Defendants have raised a disputed issue of fact precluding summary adjudication.

## III. PLAINTIFFS' DAMAGES ARE RECOVERABLE WHETHER THEY ARE CONSIDERED CONSEQUENTIAL OR DIRECT SINCE DEFENDANTS' OWN EVIDENCE PROVES FORESEEABILITY; OTHERWISE, ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON THIS ISSUE.

Defendants offer two alternative theories as to why Plaintiff's damages are not recoverable. First, they assert the damages are "consequential." Even if this were a correct

characterization, the argument fails because Defendants' own evidence demonstrates the damages were foreseeable consequences of Defendants' breach. Second, relying on correspondence which Defendants admit was never sent to Plaintiff, Defendants assert disputed evidence entitles them to a judgment. This evidence falls well short of Defendants' burden on summary judgment.

### A.  The Form Agreement Establishes Plaintiff's Damages Are Recoverable.

As Defendants concede, Virginia law permits recovery of two broad categories of damages. Direct damages "are those which flow naturally or ordinarily from the contract breach." *Long v. Abbruzzetti*, 254 Va. 122, 126, 487 S.E.2d 217, 219 (1997). *See also Sinclair Ref. Co. v. Hamilton & Dotson,* 164 Va. 203, 209, 178 S.E. 777, 779 (1935). Consequential damages are those which are "foreseen and those that are reasonably foreseeable." *Long*, 254 Va. at 127, 487 S.E.2d at 219. The parties apparently disagree as to whether penalties, excess taxes, interest, and taxing authority enforcement related costs are direct or consequential damages. (Motion at 14, 18). The Court need not resolve this issue, however, since Defendants' own evidence establishes Plaintiff's damages were foreseen as consequences of their breach.[8]

While the Form Agreement may not be enforced against Plaintiff, it does establish beyond dispute that Defendants foresaw Plaintiff's damages would ensue from their breach. The form letter expressly acknowledges the potential for penalties, interest, additional penalties,

---

[8] Although apparently not addressed by a reported Virginia decision, courts in other jurisdictions routinely permit plaintiffs recovery of tax penalties assessed due to accountants' malpractice. *See L. B. Laboratories, Inc. v. Mitchell,* 39 Cal. 2d 56, 59, 244 P.2d 385, 386 (1952) (accountant breaching promise to file tax return on time liable for ensuing penalty); *Frank v. Lockwood*, 275 Neb. 735, 749, 749 N.W.2d 443, 454 (2008) (penalties recoverable as proximately caused by accountant's negligence); *Bick v. Peat Marwick & Main*, 14 Kan.App.2d 699, 799 P.2d 94 (1990) (same); *Moonie v. Lynch*, 256 Cal.App.2d 361, 64 Cal.Rptr. 55 (1967) (same); *Ruper v. Spada*, 1987 WL 30526 (Ohio Ct. App. Dec. 24, 1987) (accountant liable for IRS penalty assessed against plaintiff).

administrative enforcement, and litigation.  (Doc. 30-2 at 1-2).  As set forth above, Plaintiff has alleged Defendant Deane knowingly caused her to incur penalties, interest, excess taxes, and enforcement-related costs by, *inter alia*, (a) preparing an invalid joint extension, (b) concealing from her his intention to prepare a separate return for Mr. Rogers, (c) concealing from her that he intended to allocate all joint credits, deductions, and tax payments to Mr. Rogers, (d) misleading her into believing she was in compliance with tax laws when he expressly admitted knowing she was not, (e) lying to her, *etc.*  As of April 15, 2010 (before the Form Agreement is dated), Defendants had caused Plaintiff recoverable damages.

### B.  The Evidence On Which Defendants Rely To Deny Liability Does Nothing More Than Create Disputed Issues Of Material Fact, Precluding Summary Judgment.

In a plainly flawed effort at obtaining summary adjudication of their liability, Defendants rely on evidence which raises factual issues, including issues as to intent and credibility.  First, Defendants ask the Court to conclude Mr. Deane "believed the Rogers would still be filing one joint return" based on an April 10, 2010 email which *was never sent to Plaintiff*.   (Motion at 15).  To begin with, nothing in the April 10th email discusses or even mentions a joint return or is inconsistent with Defendants' misconduct.  Furthermore, even though Defendants admit by the time subsequent emails were actually sent to Plaintiff they knew there would be no joint return, nothing in their May 14th or June 12th emails advises Plaintiff of this critical fact.  (Docs. 30-11 and 30-12).

Instead, the Court is asked to *infer* a joint return was intended by the April 10th email's salutation to "Ed/Edwina" (even though it was sent *only to Mr. Rogers*), and the Court is asked to *infer* Plaintiff understood the reference to "your return" in the other emails to mean a separate return.  (*Id.*).  Based on the undisputed history of Defendants' preparation of joint returns for the Rogers, it is far more likely Plaintiff understood the phrase "your return" to refer to another joint

return, particularly after Defendant Deane prepared a joint extension request.   Defendants'

assertion is also disputed by an April 12th email, again sent only to Ed Rogers, in which Mr.

Deane asks "Are **you** going to send over any of the other numbers for **your** taxes?"   (Ex. 4

(emphasis added); Ex. 5).   Mr. Deane claims he was still to prepare a joint return on April 12th.

(Doc. 30-3 at ¶ 12).   Unless the Court infers Defendants' intended the word "you" to have

different meanings when used in an email to Plaintiff as opposed to Mr. Rogers, Defendant's

argument fails.   Even were that not the case, on a motion for summary judgment all inferences

are to be drawn in Plaintiff's favor, not Defendants'.   *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139,

141 (4th Cir. 1979).[9]

Moreover, Defendants' oft-repeated statement that Plaintiff's damages were caused by

her failure to pay household employee taxes when due is false.   (Plaintiff's Dec. at ¶22).

Plaintiff attests to those taxes having been paid on a quarterly basis in 2009, (*id*.), and the joint

extension he sent her showed a tax overpayment.   (Doc. 30-6).   However, Mr. Deane, after

sending Plaintiff the joint extension request, secretly prepared a separate return for Mr. Rogers

that allocated to him, *inter alia*, credit for all of the payments.   (*Id*.).   Plaintiff was left with the

tax liabilities.   Defendants and Mr. Rogers willfully put Plaintiff in peril and concealed from her

what they had done until well after penalties, interest, and additional taxes had accrued.   (*Id*.).

Elsewhere in their brief, Defendants offer evidence intended to dispute Plaintiff's

allegations of a conspiracy.   For instance, Defendants, with the assistance of Mr. Rogers, assert

he chose to file separately for other reasons.   Defendants speculate "Ed Rogers **apparently** did

not want to be responsible for unpaid taxes on his soon-to-be-ex-wife's income."   (Motion at 19-

20) (emphasis added).   To the contrary, it is apparent Ed Rogers and Mr. Deane orchestrated a

---

[9] Issues of intent and credibility cannot be resolved on a motion for summary judgment.  Instead, they are for the trier of fact to resolve based on live testimony.

scheme to injure Plaintiff and her business.  (*See* discussion *supra* at 3-6). These arguments do nothing more than create disputes of fact.

Most importantly, and contrary to Defendants' attempt to blame Plaintiff's damages solely on her failure to pay taxes on April 15th, Defendant Deane violated Va. Code § 54.1-4413.3 by failing to notify Plaintiff of his conflict of interest, misleading her as to the joint return, taking for Mr. Rogers all of the credits, exemptions, and deductions, and then concealing his actions from her.  Because of this misconduct, Plaintiff had no reason to believe she owed any taxes. (Doc. 30-6; Plaintiff's Dec. at ¶ 22).  Nothing in the Deane or Ed Rogers declarations disputes Defendants' failure to timely advise Plaintiff of the separate returns in violation of their absolute duty to do so.

### C. The IRS Assessed A Penalty Against Plaintiff Due To The Joint Extension Request Which Defendants Prepared.

Briefly, Defendants assert Plaintiff's allegation she was assessed a penalty due to the joint extension request they prepared is "inaccurate as a matter of law." (Motion at 17).  In fact, the IRS assessed a penalty of just under $19,000 against Plaintiff for filing her 2009 return without a valid extension.  (Plaintiff's Dec. at ¶ 32).  This is another factual rather than legal issue.

## IV.   PLAINTIFF'S DIVORCE SETTLEMENT WITH MR. ROGERS DOES NOT RELEASE DEFENDANTS FROM LIABILITY.

Defendants' final argument, that Plaintiff's divorce settlement with Mr. Rogers somehow operates to release them from liability to her, is groundless.  To begin with, there is nothing in the settlement from which the Court can conclude that Plaintiff has been "compensated [fully] for her alleged damages." (Motion at 21).  Nor is there any language in the settlement from which one can infer an intent to release any party other than Mr. Rogers from some, but not all, claims between them. (Doc. 30-19 at 4).  Contrary to Defendants' assertions, the settlement does

not cover numerous tax issues, including several which comprise claims by the Plaintiff in this lawsuit, including the parties' respective entitlement to $125,000 in estimated tax payments for 2009, their respective entitlement to deduct substantial real estate taxes for 2009, their respective shares of capital gains and losses for 2009, and their respective entitlement to claim exemptions for their children for 2009.  (Plaintiff's Dec. at ¶ 15).  In other words, the settlement does not cover all claims in the instant case, and, even if it did, it does not contain any language releasing Defendants from liability.

Defendants also make passing reference to Va. Code. § 8.01-35.1, which governs contribution among joint tortfeasors.  Defendants argue the statute entitles them to a set-off in the amount of the settlement against their ultimate liability to Plaintiff.  Assuming, *arguendo*, that statute were to apply, it clearly states a release given to one tortfeasor "shall not discharge any other person from liability…."  *Id*. at § 8.01-35.1(A)(1).  While it does contemplate a set-off, there is no basis on the record before the Court to determine whether, and if so in what amount, Defendants are entitled to a set-off.  The consideration paid Plaintiff in the divorce settlement encompassed numerous claims unrelated to Plaintiff's claims against Defendants.  (Doc. 30-19 at 3-4; Plaintiff's Dec. at ¶ 15).  There is no evidence from which the Court may summarily allocate any portion of the divorce settlement to the claims in this case.

## V.   PLAINTIFF IS ENTITLED TO DISCOVERY IN ORDER TO DEVELOP A SUFFICIENT FACTUAL RECORD IN OPPOSITION TO THE MOTION.

Pursuant to Rule 56(d) and the attached declaration of Steven Oster, if notwithstanding the above this Court believes Defendants have carried their heavy burden of proving the undisputed facts entitle them to judgment, the Court should defer a ruling until after Plaintiff has had an opportunity for discovery.  Defendants' rely on declarations from the two participants in the alleged conspiracy in which they deny concerted action and assert alternative explanations

for their behavior.  Plaintiff should have the opportunity to test Defendants' assertions and their

credibility under cross-examination.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiff respectfully requests Defendants motion be

denied.

October 3, 2013                                   Respectfully submitted,


_____/S/_____
**ROBERT WINTHROP JOHNSON II**
**VIRGINIA BAR NO.  14430**
**401 Ninth St., N.W.**
**Washington, D.C. 20004**
**(703) 506-3389**
**robinjohnson@jrcdc.us**

**Steven Gremminger (*pro hac vice*)**
**Steven M. Oster (*pro hac vice*)**
**G*remminger Law Firm***
**5335 Wisconsin Ave., N.W., Ste. 440**
**Washington, D.C. 20015**

**Counsel to Plaintiff Edwina C. Rogers**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I caused a true and correct copy of the foregoing Opposition to Defendants'

Motion for Summary Judgment to be filed using the Court's electronic filing system and thereby

served on counsel of record.

October 2, 2013

_____/S/_____ _____
**ROBERT WINTHROP JOHNSON II**
**VIRGINIA BAR NO.  14430**
**401 Ninth St., N.W.**
**Washington, D.C. 20004**
**(703) 506-3389**
**robinjohnson@jrcdc.us**